**SEALED** [1]

AO 106 (Rev. 01/09)  Application for a Search Warrant

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

# UNITED STATES DISTRICT COURT

### for the
Western District of Virginia

JUL 1 4 2010

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 1:10 MJ 00101
763 Island Road )
Bristol, Virginia )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Western_____ District of _____Virginia_____ *(identify the person or describe property to be searched and give its location):* 763 Island Road, Bristol, Virginia (to include the residence, curtilage, outbuildings, persons present, and any vehicles present). Attachment A consists of a photograph of the residence at 763 Island Road, Bristol, VA.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachement B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __21__ U.S.C. § __841(a)(1)__ , and the application is based on these facts:  See Attachment C

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Snedeker, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __7/14/10__

_____
*Judge's signature*

City and state: ____Abingdon, Virginia____

Pamela Meade Sargent, USMJ
*Printed name and title*

ATTACHMENT A



763 Island Road, Bristol, VA

ATTACHMENT B

1.  Methamphetamine laboratory precursors, chemicals, and equipment including (but not limited to) the following: pseudoephedrine/ephedrine, ammonium nitrate (e.g. instant cold packs), lithium (e.g. batteries containing lithium), sodium hydroxide (e.g. Red Devil Lye), methyl alcohol/ethanol (e.g. Heet – fuel line antifreeze), petroleum ether/petroleum naphtha/white gas (e.g. Coleman Fuel), muriatic acid, sulfuric acid, table salt, aluminum foil, plastic soda bottles (empty or no longer containing original contents), glass mason jars, plastic food storage containers, plastic tubing, electrical tape and/or duct tape, coffee filters, pipe cutters (used to cut open lithium batteries), electric hot plates/electric skillets, frying pans, razor blades, digital scales, funnels, and stirring utensils.

2.  Unidentified powders (processed/semi-processed precursors, chemicals).

3.  Glass jars and plastic bottles/storage containers filled with unidentified liquids or sludges (processed/semi-processed precursors and other unidentified mixtures related to the manufacturing of methamphetamine)

4.  Drug distribution paraphernalia including (but not limited to) digital scales, cutting material, plastic baggies, wrapping material; devices used to communicate with methamphetamine manufacturing co-conspirators and drug traffickers including cellular telephones, pagers, and two-way radios; electronic equipment used for counter-surveillance to include scanners, anti-bugging devices, and video surveillance cameras; specially built hidden compartments or paperwork evidencing the building of hidden compartments on vehicles (such compartments are routinely used by narcotics traffickers to conceal and transport controlled substances and the proceeds from the sale of controlled substances).

5.  Firearms, including but not limited to handguns, rifles, and shotguns that are commonly used by individuals to protect clandestine methamphetamine manufacturing operations, controlled substances, and related drug proceeds/assets. Firearms, oftentimes stolen, are also routinely bartered in exchange for controlled substances.

6.  Books, records (including computerized records on computer hard drives, floppy disks, CDs, flash/jump drives, and other computer media), receipts, ledgers, notes, and videos pertaining to the illicit manufacturing, distribution, purchasing, and transporting of methamphetamine and methamphetamine precursors, chemicals, and equipment.

## ATTACHMENT B (Continued)

7. Stored messages, telephone numbers, and addresses relating to co-conspirators involved with the illicit manufacturing, distribution, purchasing, and transporting of methamphetamine and methamphetamine precursors, chemicals, and equipment. These messages, telephone numbers, and addresses may be stored in computers and computer media (including but not limited to floppy disks, CDs, and flash/jump drives), personal digital assistants (PDA's), and cellular telephones. The above referenced telephone numbers and addresses may also be written on personal calendars, personal address and /or telephone books, Rolodex type indices, notebooks, and loose pieces of paper.

8. Photographs (including digital), negatives, videos (VHS, digital, or otherwise), and undeveloped film and the contents therein depicting persons involved with/engaged in the manufacturing/distributing/storing/use of methamphetamine and/or the purchasing, preparing, and storing of methamphetamine laboratory precursors, chemicals, and equipment.

9. Books, records (including computerized records on hard drives, floppy disks, CDs, flash/jump drives, and other computer media), ledgers, receipts, bank statements, cashier's checks, and other items evidencing the acquisition, secreting, transferring and/or concealment of assets or the expenditure of narcotics proceeds.

10. Items or articles of personal property tending to show ownership, dominion, or control of the premises/property/vehicles. Such items or articles include (but are not limited to) personal identification, personal correspondence, diaries, checkbooks, notes, photographs (including digital), keys, receipts, personal telephone and address books, videos (including digital), and motor vehicle related documents (titles/registrations).

11. Stolen property including but not limited to the following: computers, televisions, various home electronic devices, motor vehicles, watercraft, chainsaws, lawnmowers and other lawn-and-garden type implements. Such stolen property is routinely bartered in exchange for controlled substances and is oftentimes recovered at narcotics traffickers'/methamphetamine manufacturers' residences.

12 Large amounts of currency (exceeding $1,000.00) or readily transported assets which may be used as cash equivalents (cashier's checks, money orders, gold, diamonds, precious jewels, etc.).

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1.  I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately nineteen (19) years.  During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors.   I am a graduate of both the DEA's Clandestine Laboratory Investigation/Safety Certification Program and the DEA's Clandestine Laboratory Site Safety Officer School.  As part of my training, I have manufactured methamphetamine.   I have participated in the execution of more than one hundred fifty (200) narcotics related search warrants and the seizure and dismantling of more than (100) clandestine methamphetamine laboratories.   I have testified as an expert on multiple occasions in Federal Court regarding the clandestine manufacturing of methamphetamine.

2.  The manufacturing of methamphetamine (a Schedule II Controlled Substance) by way of the ammonium nitrate/lithium metal method (also known as the "shake and bake" or "one pot" method) requires pseudoephedrine/ephedrine (obtained through the processing of cold/allergy pills, tablets, gelcaps, and liquids containing pseudoephedrine or ephedrine), ammonium nitrate (found in instant cold packs), and lithium metal (found in lithium batteries).  Other chemicals/ingredients commonly used during the ammonium nitrate/lithium metal method include sodium hydroxide (e.g. Red Devil Lye), methyl alcohol/ethanol (e.g. Heet – fuel line antifreeze), petroleum ether/petroleum naphtha/white gas (e.g. Coleman Fuel), acetone,  muriatic acid, sulfuric acid, table salt, and aluminum foil.  Equipment/tools commonly used during the manufacturing of methamphetamine  include soda bottles, glass mason jars, plastic food storage containers, plastic tubing, electrical tape and/or duct tape, coffee filters, pipe cutters (often used to open lithium batteries),  frying pans/electric skillets/propane burners (to dry the methamphetamine), razor blades, digital scales, funnels, and stirring utensils.

3.  Individuals who manufacture methamphetamine (hereafter referred to as "manufacturers") usually use and sell the methamphetamine they manufacture. Manufacturers routinely have other persons (hereafter referred to as "shoppers") purchase the precursors, chemicals, and equipment/supplies needed to manufacture methamphetamine.  Manufacturers will regularly pay shoppers in methamphetamine (to use and sell) and/or cash for their assistance.

4. The facts set forth below concerning Mickey Worley and 763 Island Road, Bristol, VA are known to me as a result of information provided to me by Bristol Virginia Police Department (BVPD) Detective Aaron Hankins.

5. During the last (18) days, a reliable BVPD confidential source (hereafter referred to as "CS") observed Mickey Worley manufacturing methamphetamine via the "shake and bake" method inside of Worley's residence located at 763 Island Road, Bristol, VA. During this same time period, the CS performed a controlled delivery (monitored, recorded, and supervised by law enforcement) of cold pills containing pseudoephedrine to Worley at his residence and received a small quantity of methamphetamine from Worley as payment for the cold pills. Immediately after the exchange, the CS met with Det. Hankins and turned over the methamphetamine provided to the CS by Worley. The methamphetamine was subsequently field tested (utilizing a chemical test kit) by Det. Hankins and the results were positive for methamphetamaine.

During the last (72) hours, the CS engaged in a conversation (not recorded or monitored by law enforcement) with Worley during which Worley told the CS he would trade more methamphetamine with the CS if the CS brought him more pills (containing pseudoephedrine).

The CS has admitted being a former methamphetamine user and acknowledged observing the manufacturing of methamphetamine on another occasion.

The CS has performed multiple controlled purchases (monitored, recorded, and supervised by law enforcement) of controlled substances from a variety of individuals during the last few months.

On multiple occasions during the last few months, the CS has successfully introduced an undercover police officer to methamphetamine distributors who have subsequently sold methamphetamine to the undercover officer.

6. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that individuals who illegally manufacture methamphetamine typically maintain methamphetamine manufacturing precursors/chemicals/equipment (as described in paragraph #3 above) along with receipts / notes / records / telephone numbers (as they pertain to manufacturing/distribution), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on their persons, inside their residences, garages, outbuildings/barns, vehicles (or the vehicles they operate), and inside of vehicles registered to other persons when those vehicles are parked at the manufacturer's residence/property.

7. Individuals who manufacture methamphetamine routinely have persons who are methamphetamine customers and/or co-conspirators (i.e. shoppers) present at their residences/properties. These customers/co-conspirators are typically drug users and/or drug traffickers themselves as they generally sell some (if not all) of the methamphetamine they obtain in order to make a profit, pay for their own drug habits, or both. These customers/co-conspirators often illegally possess

methamphetamine and methamphetamine use paraphernalia and routinely possess drug records / notes / ledgers, stored telephone numbers, and messages pertaining to their relationships with methamphetamine manufacturers/traffickers (sources), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on their persons and in their vehicles (or the vehicles they operate) which are oftentimes parked at the the drug manufacturer's/trafficker's residences/properties.

8.  The clandestine manufacturing of methamphetamine is an extremely dangerous process that involves the use of toxic, flammable, explosive, and incompatible chemicals.  Explosions, fires, and toxic gasses generally pose the greatest threats to law enforcement officers executing search warrants at methamphetamine manufacturing sites.  It is not uncommon for methamphetamine manufacturers to panic when they become aware of a law enforcement presence at a methamphetamine manufacturing site.  As a result of their panic, methamphetamine manufacturers have been known to attempt to dispose of evidence of their manufacturing by throwing/pouring chemicals into toilets, bathtubs, and sinks before law enforcement can gain entry and secure the premises.  The pouring/mixing of the various chemicals during the attempted disposal creates an increased risk of explosion, fire, and toxic gas exposure due to the nature of the chemicals involved.   This affiant believes that the above presents reasonable suspicion that knocking and announcing the presence of law enforcement officers at the time of the execution of this search warrant would prove dangerous to the law enforcement officers involved in the execution of the search warrant.

9.  Based upon the facts set forth above, I believe there is probable cause for the issuance of a search warrant for the premises known as 763 Island Road, Bristol, Virginia (located within the Western District of Virginia).

_____          7-14-2010
Brian Snedeker, Special Agent (DEA)                Date

Subscribed and sworn to before me, this the 14th pms day of July, 2010
in Abingdon, Virginia.

_____
Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia